WILLIAM S. LITTLE, PLAINTIFF, *v.* JAMES C. FARGO, AS PRESIDENT OF THE MERCHANTS' DISPATCH TRANSPORTATION COMPANY, DEFENDANT.

*Common carrier — when its liability cannot be limited by a custom not brought to the knowledge of the party dealing with it — when a common carrier may justify its delay in transporting goods, by showing that it was caused by a strike among certain of its employees.*

The defendant, a joint stock association, was, and still is, engaged in the transportation of property, as a common carrier, by lines of railroad, among which are the New York Central and Hudson River, and the Lake Shore and Michigan Southern Railroads. The office of the defendant at Rochester was, at the time hereafter mentioned, in the freight office of the New York Central and Hudson River Railroad Company, by which company receipts were given to persons there delivering goods for transportation by the defendant company. On April 25, 1881, the plaintiff, by his agent, delivered at the freight office for transportation by the defendant to the plaintiff, as consignee, at Corning, in the State of Iowa, five boxes and one bale of trees in good order, and received from the New York Central and Hudson River Railroad Company a receipt to that effect, upon the margin of which were the letters "M. D.," indicating that they were received for transportation by the defendant company. The trees were shipped April twenty-sixth, and did not reach the place of destination until May twenty-first, when they were dead and worthless.

Upon the trial of this action, brought by the plaintiff to recover the damages thereby sustained, the defendant claimed that its undertaking, as a common carrier, was qualified by a special agreement by which the plaintiff assumed all risk of injury by delivery and loss that might be occasioned by mob, riot or insurrection, and sought to support this claim by proving the method and course adopted by the company in carrying on its business, which was that the receipts from the railroad company, for goods delivered at the freight depot

to be carried by the defendant, were presented by the consignor to the agent of the defendant company, and bills of lading taken from it expressing the contract and limiting the liability of the defendant.

*Held,* that as there was no evidence given which would justify the conclusion that the plaintiff had knowledge or information of such custom, the defendant's liability was not affected by it.

That the fact that the receipt of the railroad company did not express the terms of a contract to carry was not important, inasmuch as the defendant received and proceeded to transport the property without any contract other than that which was implied by the said receipt.

*Shelton* v. *Merchants' Dispatch Transportation Company* (59 N.Y , 258) distinguished.

The defendant claimed that it was prevented from transporting the property to the place of destination within the usual time, by riotous and tumultuous assemblages of persons, who by force and violence detained and delayed the transportation without its fault, and that the delivery of the goods was made as soon, and in as good condition, as it was able to make it. The evidence tended to prove that the goods arrived at Englewood, a freight yard near the city of Chicago, on April thirtieth, were taken to the city on May third, and delivered to the connecting carrier ·on May sixteenth; that the Lake Shore and Michigan Southern Railway Company encountered difficulties in moving its trains into and through the city, which were occasioned by a combination of persons, composed of switchmen of that and other railroads and others, to obstruct the movement of the trains; that there was a strike of this class of employees, which commenced on May second and continued until May sixteenth, which quite effectually interrupted the business of the road; that although the company employed other men, and had an adequate force to operate its trains, they were prevented by this organized opposition from proceeding with .the business; that the trouble was mostly within the city, but that it also extended to the Englewood yard.

*Held,* that while the defendant was liable for the failure of the agencies, employed by it to carry the property, to exercise proper care and diligence, yet as the evidence given upon the trial would have authorized the jury to conclude that the company used all reasonable means and effort to move its trains, and that the delay in the time occupied in so doing was without negligence or fault on its part, it was error for the court to refuse to submit the case to the jury and to direct a verdict in favor of the plaintiff.

*Geismer* v. *Lake Shore and Michigan Southern Railway Company* (102 N. Y. 563) reversing; S. C. (34 Hun, 50) followed.

MOTION by the defendant for a new trial on exceptions taken at Monroe Circuit, and ordered to be heard at the General Term in the first instance.

*William S. Oliver,* for the plaintiff.

*Daniel H. McMillan,* for the defendant.

BRADLEY, J. :

The Merchants' Dispatch Transportation Company, a joint stock association, of which Fargo was president, was a common carrier, engaged in the transportation of property as such by lines of railroad, amongst which were the New York Central and Hudson River Railroad and the Lake Shore and Michigan Southern Railway. The office of the defendant company at the city of Rochester was, at the time in question, in the freight office of the New York Central and Hudson River Railroad Company, and when goods were delivered there for transportation by the defendant company receipts were given by the railroad company to the consignor.

On the 25th of April, 1881, the plaintiff, by his agent, delivered at the freight office for transportation by the defendant company to the plaintiff, as consignee, at Corning, in the State of Iowa, five boxes and one bale of trees, in good order, and received from the New York Central and Hudson River Railroad Company a receipt to that effect, upon the margin of which were the letters " M. D.," indicating that they were received for transportation by the defendant company. The trees were shipped April twenty-sixth, and did not reach the place of destination until the twenty-first of May following, when they were dead and worthless.

The trial court declined to submit any question to the jury, and directed a verdict for the plaintiff for the amount of his loss and interest, and exception was taken. The defendant company admits that the property was delivered to and received by it for transportation from the city of Rochester, New York, to Corning, Iowa, and alleges : First. That its undertaking as a common carrier was qualified by a special agreement by which the plaintiff assumed all risk of injury by delay, and loss that might be occasioned by a mob, riot or insurrection. Second. That it was prevented from transporting to the place of destination within the usual time by riotous and tumultuous assemblage of persons, who by force and violence detained and delayed the transportation without its fault, and that the delivery of the goods at their place of destination was made as soon, and in as good condition as it was able to do it. The usual time occupied in the transportation between those places was eight to ten days.

It is contended on the part of the defendant, that it was relieved

from liability by contract between the parties; and this contention is founded upon the method and course of business of the defendant company, which was that the receipts from the railroad company, for goods delivered at the freight house to be carried by the defendant, were presented by the consignor to the agent of the defendant company and bills of lading taken from it — expressing the contract of the carrier, and that those made in relation to property like that in question released the company from liability arising from its perishable character. At least, the evidence on the part of the defendants tended to prove that such was its method and the effect of its bill of lading. And for the purposes of the question here, we so assume. The plaintiff is not charged with this situation unless he was advised of this course of business and custom of the defendant at the time he shipped this property. The defendant received and undertook to transport, and did carry the goods without delivering to the plaintiff any bill of lading or informing him on that occasion of any qualification of its duty as a carrier. It may be that if he understood that such was the method of the defendant in making its contracts of carriage he would have been chargeable with its legal effect, although he omitted to present the receipt of the railroad company and obtain the bill of lading. It then might be said that he had knowledge that the contract was not implied by the mere acceptance indicated by the receipt of the railroad company. (*Shelton* v. *Merchants Dispatch Transportation Co.*, 59 N. Y., 258.) But that question may be worthy of discussion. It is not here and we express no opinion, upon it. (*Dorr* v. *N. J. Nav. Co.*, 11 N. Y. 485.)

Although the plaintiff had on previous occasions shipped goods for carriage by the defendant, and they had been transported by it, he says that he had never received any bill of lading, nor anything other, more or different than the receipt of this railroad company upon the delivery of the goods, and that he never had understood or been advised of any course of business or custom of the defendant which required the presentation of such receipt and the taking of a bill of lading, or that the defendant had any method of making a contract for transportation at Rochester other than that which was implied by the receipt of property for that purpose in the manner that it was done and represented in this instance. And

while the agent of the defendant expresses quite confidently that the plaintiff understood this method of the defendant, he founds his statement wholly upon assumption and belief, without the knowledge of any fact or circumstance to support his statement as evidence. There is, therefore, no evidence to justify the conclusion that the plaintiff had knowledge or information of any custom of the defendant in respect to its contract for transportation, which qualified its common law undertaking as common carrier, and therefore, as applicable to him and the transaction in question, there is no modification of the defendant's liability as such. (*Coffin* v. *N. Y. C. R. R. Co.*, 64 Barb., 379; affirmed, 56 N. Y., 632; *Nicholas* v. *N. Y. C. and H. R. R R. Co.*, 89 id., 370.)

The fact that the receipt taken by the plaintiff of the railroad company, did not express the terms of a contract to carry, does not seem to us important, inasmuch as the defendant received and proceeded to transport the property without any contract other than that which was implied by the receipt of it for carriage to the place of destination, and when it assumed to do so the undertaking of the defendant, as carrier, was complete without any further contract. The determination in *Shelton* v. *Merchants' Dispatch Transportation Company* (*supra*) was governed by the fact that the shipper and the carrier had a habitual course of dealing respecting the contracts for transportation, which was properly considered in giving construction to their acts and intention at the time of the delivery and shipment of the goods, and therefore the bill of lading taken by the shipper from the carrier after their shipment, might be treated as the consummation of the understanding of those parties at the time they were delivered to and received by the carrier. This was the ground for its support as the contract, and furnished the reason for the reversal of the court below. (4 J. & S., 527.)

The right of the defendant was to withhold the transportation of the property, and decline to send it forward until the bill of lading was taken, defining and qualifying its duty or liability as carrier, and to promptly so advise the plaintiff or his agent. The fact that the plaintiff had that year executed with the railroad company a contract having relation to transportation by it for him, qualifying its liability in some respects, we think had no material

bearing on any question here; that was made with the company as a principal party, and related solely to transportation by it for the plaintiff. The goods in question were carried by it for the defendant, and the latter was the only party with which the plaintiff contracted to transport them.

The defendant undertook to carry the property to the place of destination, and assumed, in that respect, the common law duty. And if the delay which occasioned the injury to it was caused by want of due diligence on the part of the defendant, it became liable to the plaintiff. This is the more serious question. The defendant was responsible for the failure to exercise proper care and diligence on the part of the agencies employed by it to carry the property. Their negligence is that of the defendant, and if it was without fault, the plaintiff is not entitled to recover. (*Wibert v. N. Y. and E. R. R. Co.*, 12 N. Y., 245.)

The goods arrived at Englewood, a freight yard near the city of Chicago, on April thirtieth, and were taken to the city May third and delivered to connecting carrier May sixteenth. The evidence tended to prove that the Lake Shore and Michigan Southern Railway Company encountered difficulty in moving its trains into and through the city, which was occasioned by a combination of persons composed of switchmen of that and other railroads, and others, to obstruct the movement of the trains; that there was a strike of this class of railroad employes, which commenced on May second and continued until May sixteenth, and they quite effectually, during the continuance of the strike, interrupted the business of the road; that although that company employed other men, and had an adequate force to operate its trains, they were prevented by this organized opposition from proceeding with the business; that the strikers got on to the trains, applied the brakes, stopped them, took out and threw away the coupling pins, thus cutting the trains to pieces; turned switches, and in that manner derailed moving trains; sought, by persuasion and threats, to induce and compel the workmen to quit the service of the company, and by other means sought to obstruct and delay the movement by the company of its trains.

This trouble was mostly within the city, but it also extended to the Englewood yard. And upon the evidence, the conclusion was

permitted that the company used all reasonable means and effort to move its trains, and that the delay in the time occupied in so doing was without negligence or fault on its part. So far as this interruption necessarily delayed the delivery of goods to their place of destination, it constituted a legal excuse and defense to the railroad company for any injury to freights occasioned by such delay, although caused largely by the action of the employees of the company who were in the strike. They were not its employees while so engaged against the company. (*Geismer* v. *L. S. and M. S. Ry. Co.*, 102 N. Y., 563.) And the same defense is available to the defendant, so far as the transportation of the property in question was necessarily delayed, and the loss occasioned by the same cause. The railroads were the known agencies for the transportation by the defendant of the goods. The fact is so alleged and admitted by the pleadings; and the undertaking of the defendant to carry them was so qualified as not to embrace liability for the consequences of necessary delays in transit by the railroad companies. To constitute such delay an excuse it must be without fault or negligence of the carrier, and such as could not, by the exercise of reasonable care and diligence, have been avoided. It is contended, on the part of the plaintiff, that there was no necessary occasion for any material delay in transferring and forwarding the property in question, because the connecting line for it was the Chicago, Burlington and Quincy Railroad, and the transfer to it could properly be made at Englewood, and that there was no occasion to take it into the city of Chicago or to subject it to the delay occasioned by the obstructing forces there.

The plaintiff's agent says that the trees were destined for the Chicago, Burlington and Quincy Railroad for carriage beyond Chicago; that about May twelfth he found them on the platform of the freight depot of the Lake Shore and Michigan Southern Railway, in Chicago; that there was then no appearance of violence or strike, and that the trees had to be taken back to Englewood to be sent west to their destination. These facts are entitled to consideration, and it may be, by the use of the proper diligence which the company was required to exercise, that the plaintiff's property may have been transferred and sent forward in time to have obviated the loss sustained, and a finding to that effect would

have been supported by the evidence; but, in view of all the circumstances, there was a question of fact for the jury. The evidence tends to prove that the strike of the switchmen was general, of all the railroads coming into the city; that it extended, to some extent, to Englewood. This property was in a freight car upon the Lake Shore and Michigan Southern Railway. How it was situated, in reference to other property (if any) in the same car, or the location of the car in the train of which it was a part, does not appear. It does appear that there were several trains collected at the Englewood yard, and there is some evidence tending to prove that the company was diligently making an effort to reach its connecting lines; and whether the company failed, with reasonable diligence, to avail itself of all the facilities and the best opportunities under all circumstances, cannot be determined as matter of law upon the evidence and inferences derivable from it. This, and the whole question of diligence and negligence, so far as it has relation to the transportation of the plaintiff's property, was properly a question for the consideration of the jury. It may be that if the trial court had been advised of the opinion of the Court of Appeals in the *Geismer* case, resulting in reversal of the decision of this court (34 Hun, 50), delivered only a few days before the trial of this action, the case might have been sent to the jury, upon the question referred to, as one of fact for them to determine.

The motion for a new trial should be granted, costs to abide the event.

HAIGHT and LEWIS, JJ., concurred.

Motion for new trial granted, costs to abide event.